**KAZEROUNI LAW GROUP, APC**
Abbas Kazerounian, Esq. (SBN: 249203)
ak@kazlg.com
245 Fischer Avenue, Suite D1
Costa Mesa, California 92626
Telephone: (800) 400-6808
Facsimile: (800) 520-5523

[Additional Attorneys On Signature Page]

Attorneys for Plaintiff,
Richard Springer

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **MUHAMMED ABDELJALIL AND RICHARD SPRINGER, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED,**<br><br>**PLAINTIFFS,**<br>**V.**<br><br>**GE CAPITAL RETAIL BANK,**<br><br>**DEFENDANT.** | Case No.: 12-CV-02078-JAH-MDD<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF RICHARD SPRINGER'S MOTION FOR CLASS CERTIFICATION PURSUANT TO FED. R. CIV. P. 23(B)(2) AND (B)(3)**<br><br>**Date:** June 23, 2014<br>**Time:** 2:30 p.m.<br>**Place:** 13B<br>**Judge:** Hon. John A. Houston<br><br>**ORAL ARGUMENT REQUESTED**<br><br>[Filed concurrently with Declaration of Richard Springer; Declaration of Abbas Kazerounian; Declaration of Joshua B. Swigart; Declaration of Todd M. Friedman; and Declaration of Jeffrey A. Hansen] |

Kazerouni Law Group, APC
Costa Mesa, California

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ..................................................................ii

I.     INTRODUCTION .................................................................1

II.    PROCEDURAL BACKGROUND ...........................................2

III.   FACTUAL BASIS FOR CLASS CERTIFICATION ..............2

IV.    TELEPHONE CONSUMER PROTECTION ACT ...............7

V.     RULE 23 STANDARDS AND CLASS CERTIFICATION ANALYSIS .. 9

       A.     The Proposed Class of Non-Customers of Defendant
              Autodialed Or Called With A Prerecorded Voice Is Adequately
              Defined And Clearly Ascertainable .................................10

              1.     Step One ..............................................................11

              2.     Step Two .............................................................11

              3.     Step Three ..........................................................12

              4.     Step Four .............................................................13

       B.     Numerosity ......................................................................14

       C.     Commonality ....................................................................15

       D.     Typicality .........................................................................17

       E.     Adequacy of Representation ............................................19

       F.     Hybrid Class Certification Should Be Granted .............20

              1.     Rule 23(b)(2) ......................................................20

              2.     Rule 23(b)(3) ......................................................21

       G.     A Class Action Is Superior To Numerous Individual TCPA
              Actions ..............................................................................24

VI.    CONCLUSION ....................................................................25

*Kazerouni Law Group, APC*
*Costa Mesa, California*

# TABLE OF AUTHORITIES

**Cases**

*Abels v. JBC Legal Group, P.C.*,
   227 F.R.D. 541 (N.D. Cal. 2005) ........................................................ 22

*Alea London Ltd. v. Am. Home Servs.*,
   638 F.3d 768 (11th Cir. Ga. 2011) ..................................................... 23

*Armstrong v. Davis*,
   275 F.3d 849 (9th Cir. Cal. 2001) ...................................................... 18

*Barani v. Wells Fargo Bank, N.A.*,
   2014 U.S. Dist. LEXIS 49838 (S.D. Cal. Apr. 9, 2014) .............................. 9, 22

*Bellows v. NCO Fin. Sys.*,
   2008 U.S. Dist. LEXIS 114451 (S.D. Cal. Sept. 5, 2008) ............................ 25

*Bruce v. Christian*,
   113 F.R.D. 554 (S.D.N.Y. 1986) ......................................................... 14

*Califano v. Yamaki*,
   442 U.S. 682 (1979) ........................................................................ 9

*CE Design Ltd. v. Cy's Crabhouse North, Inc.*,
   259 F.R.D. 135 (N.D. Ill. 2009) ........................................................ 22

*Charlebois v. Angels Baseball, L.P.*,
   2011 U.S. Dist. LEXIS 71452,
   2011 WL 2610122 (C.D. Cal. June 30, 2012) ....................................... 15

*Dunn v. City of Chicago*,
   231 F.R.D. 367 (N.D. Ill. 2005) ........................................................ 24

*Eisen v. Carlisle & Jacquelin*,
   417 U.S. 156 (U.S. 1974) .................................................................. 9

*Elliot v. ITT Corp.*,
   150 F.R.D. 569 (N.D. Ill. 1992) ........................................................ 10

*///*

**Kazerouni Law Group, APC**
Costa Mesa, California

**Kazerouni Law Group, APC**
Costa Mesa, California

*Ellis v. Costco Wholesale Corp.,*
    285 F.R.D. 492 (N.D. Cal. 2012) ................................................ 15, 24

*Ellison v. Steve Madden, LTD,*
    No. 11-CV-5935-PSG (AGRx) (C.D. Cal. Sept. 25, 2012) ..................... 16

*Fillichio v. M.R.S. Assocs.,*
    2010 U.S. Dist. LEXIS 112780 (S.D. Fla. Oct. 19, 2010) ..................... 21

*Franklin v. City of Chicago,*
    102 F.R.D. 944 (N.D. Ill. 1984) .................................................. 16

*General Telephone Co. of Southwest v. Falcon,*
    457 U.S. 147 (1982) ............................................................ 10, 15

*G.M. Sign, Inc. v. Franklin Bank, S.S.B.,*
    2008 U.S. Dist. LEXIS 79827 (N.D. Ill. Aug. 20, 2008) ..................... 18

*G.M. Sign, Inc. v. Group C Communs., Inc.,*
    2010 U.S. Dist. LEXIS 17843 (N.D. Ill. Feb. 25, 2010) ....................... 24

*Grant v. Capital Management Services, L.P.,*
    2011 WL 3874877 (9th Cir. Sept. 2, 2011) ....................................... 8

*Gulf Oil Co. v. Bernard,*
    462 U.S. 89 (1981) ................................................................ 1

*Gusman v. Comcast Corp.,*
    2014 U.S. Dist. LEXIS 46956 (S.D. Cal. Apr. 2, 2014) ..................... 15

*Hanlon v. Chrysler Corp.,*
    150 F.3d 1011 (9th Cir. Cal. 1988) .............................. 15, 19, 22, 25

*Hanon v. Dataproducts Corp.,*
    976 F.2d 497 (9th Cir. 1992) ...................................................... 9

*Harris v. Circuit City Stores, Inc.,*
    2008 U.S. Dist. LEXIS 12596 (N.D. Ill. Feb. 7, 2008) ..................... 18

*Hofstetter v. Chase Home Fin., LLC,*
    2011 U.S. Dist. LEXIS 38124 (N.D. Cal. Mar, 31 2011) ..................... 11

*Holtzman v. Turza,*
    2009 U.S. Dist. LEXIS 95620 (N.D. Ill. Oct. 14, 2009) ...................................... 18

*Ikonen v. Hartz Mountain Corp.,*
    122 F.R.D. 258 (S.D. Cal. 1988)................................................................................15

*In re Adobe Sys., Inc. Sec. Litig.,*
    139 F.R.D. 150 (N.D. Cal. 1991) ............................................................................... 9

*In re Nissan Motor Corp. Antitrust Litigation,*
    552 F.2d 1088 (5th Cir. 1977) ................................................................................. 13

*Irwin v. Mascott,*
    2001 U.S. Dist. LEXIS 3285 (N.D. Cal. Feb. 27, 2001) ........................................ 7

*Karen S. Little, L.L.C. v. Drury Inns, Inc.,*
    306 S.W.3d 577 (Mo. Ct. App. 2010).................................................................... 1

*Lee v. Stonebridge Life Ins. Co.,*
    2013 U.S. Dist. LEXIS 19774 (N.D. Cal. Feb. 12, 2013) ........................... passim

*Lemieux v. v. Schwan's Home Serv.,*
    2013 U.S. Dist. LEXIS 127032 (S.D. Cal. Sept. 5, 2013) .......................... passim

*Maier v. J. C. Penney Corp.,*
    2013 U.S. Dist. LEXIS 84246, (S.D. Cal. June 13, 2013) ....................................... 8

*Makaeff v. Trump Univ., LLC,*
    2014 U.S. Dist. LEXIS 22392 (S.D. Cal. Feb. 21, 2014) ..................................15

*Martin v. Heinold Commodities, Inc.,*
    139 Ill. App. 3d 1049 (1985)................................................................................... 23

*Mashiri v. Ocwen Loan Servicing, LLC,*
    2013 U.S. Dist. LEXIS 154534 (S.D. Cal. Oct. 28, 2013).................................23

*McCabe v. Crawford & Co.,*
    210 F.R.D. 631, 644 (N.D. Ill. 2002))..................................................................15

*McPhail v. First Command Fin. Planning, Inc.,*
    247 F.R.D. 598 (S.D. Cal. 2007)............................................................................. 7

**Kazerouni Law Group, APC**
Costa Mesa, California

Kazerouni Law Group, APC
Costa Mesa, California

*Meyer v. Portfolio Recovery Associates, LLC*,
  2012 WL 4840814 (9th Cir. Oct. 12, 2012)...................................................passim

*Mendoza v. Home Depot, U.S.A., Inc.*,
  2010 U.S. Dist. LEXIS 13025 (C.D. Cal. Jan. 21, 2010) ....................................... 14

*Messner v. Northshore Univ. HealthSystem*,
  669 F.3d 802 (7th Cir. Ill. 2012)................................................................ 22

*Mims v. Arrow Fin. Servs. LLC*,
  132 S. Ct. 740 (U.S. 2012) .......................................................................... 1

*Montgomery v. Rumsfield*,
  572 F.2d 250 (9th Cir. 1978) ...................................................................... 9

*Moreno v. Autozone, Inc.*,
  251 F.R.D. 417 (N.D. Cal. 2008) ............................................................... 10

*Moser v. F.C.C.*,
  46 F.3D 970  (9th Cir. 1995)....................................................................... 8

*Murray v. GMAC Mortgage Corp.*,
  434 F.3d 948 (7th Cir. 2006)................................................................24-25

*Negrete v. Allianz Life Ins. Co. of N. Am.*,
  238 F.R.D. 482 (C.D. Cal. 2006) ............................................................... 13

*Phillips Petroleum v. Shutts*,
  472 U.S. 797 (1985) ................................................................................. 1

*Ritchie v. Van Ru Credit Corp.*,
  2014 U.S. Dist. LEXIS 31934 (D. Ariz. Mar. 12, 2014) ...................................16

*Robbins v. Coca-Cola-Company*,
  2013 U.S. Dist. LEXIS 72725 (S.D. Cal. May 22, 2013)..................................... 8

*Santillan v. Ashcroft*,
  No. C 04-2686 MHP, U.S. Dist. LEXIS 20824 (N.D. Cal. Oct. 12, 2004) ......... 10

*Satterfield v. Simon & Schuster, Inc.*,
  569 F.3d 946 (9th Cir. 2009).................................................................... 8

Kazerouni Law Group, APC
Costa Mesa, California

*Schwartz v. Upper Deck Co.,*
    183 F.R.D. 672 (S.D. Cal. 1999)................................................................ 10

*Shaw v. BAC Home Loans Servicing, LP,*
    2011 U.S. Dist. LEXIS 149416 (S.D. Cal. Dec. 29, 2011) ................................. 10

*Silbaugh v. Wiking Magazine Servs.,*
    278 F.R.D. 389 (N.D. Ohio 2012) ........................................................ 23

*Spencer v. Beavex, Inc.,*
    2006 U.S. Dist. LEXIS 98565 S.D. Cal. Dec. 15, 2006).................................... 14

*Staton v. Boeing Co.,*
    327 F. 3d 938 (9th Cir. 2003).......................................................... 14,19

*Stern v. DoCircle, Inc.,*
2014 U.S. Dist. LEXIS 17949 (C.D. Cal. Jan. 29, 2014)...........................1,10, 23

*St. Paul Fire & Marine Ins. Co. v. Onvia, Inc.,*
    2007 U.S. Dist. LEXIS 11650 (W.D. Wash. Feb. 16, 2007)............................... 1

*Thompson v. Clear Channel Communs., Inc. (In re Live Concert Antitrust Litig.),*
    247 F.R.D. 98 (C.D. Cal. 2007)............................................................9

*Valentino v. Carter-Wallace, Inc.,*
    97 F.3d 1227 (9th Cir. 1996)......................................................... 22, 24

*Wagner v. Nutrasweet Co.,*
    95 F.3d 527 (7th Cir. Ill. 1996) ......................................................... 18

*Wal-Mart Stores, Inc. v. Dukes,*
    131 S. Ct. 2541 (U.S. 2011) ........................................................ passim

*Westways World Travel, Inc. v. AMR Corp.,*
    218 F.R.D. 223 (C.D. Cal. 2003) ........................................................ 25

*Wolin v. Jaguar Land Rover N. Am., LLC,*
    617 F.3d 1168 (9th Cir. 2010)........................................................... 22

*Yoshioka v. Charles Schwab Corp.,*
    2011 U.S. Dist. LEXIS 147483 (N.D. Cal. Dec. 22, 2011) ..........................20,21

1

## Statutes

47 U.S.C. § 227 ................................................................................................... 1

47 U.S.C. § 227(a)(1) .......................................................................................... 8

47 U.S.C. § 227(b)(1)(A) ..................................................................................... 8

47 U.S.C. § 227(b)(1)(A)(iii) ........................................................... 1,6,7,8,12,19

47 U.S.C. § 227(b)(3)(A) ..................................................................................... 9

47 U.S.C. § 227(b)(3)(B) ................................................................................ 9, 25

## Rules

Fed. R. Civ. P. 23 ......................................................................................passim

Fed. R. Civ. P. 23(a) ..................................................................................passim

Fed. R. Civ. P. 23(a)(1) ...................................................................................... 14

Fed. R. Civ. P. 23(a)(2) .................................................................................. 15, 18

Fed. R. Civ. P. 23(a)(3) ...................................................................................... 17

Fed. R. Civ. P. 23(a)(4) ...................................................................................... 19

Fed. R. Civ. P. 23(b) ............................................................................................ 9

Fed. R. Civ. P. 23(b)(2) ...............................................................................passim

Fed. R. Civ. P. 23(b)(3) ...............................................................................passim

Fed. R. Civ. P. 23(g)(1)(B) ................................................................................ 19

Fed. R. Civ. P. 26(a)(2)(b) ................................................................................... 3

Fed. R. Civ. P. 30(b)(6) ........................................................................................ 2

*Kazerouni Law Group, APC*
Costa Mesa, California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**Kazerouni Law Group, APC**
Costa Mesa, California

1  **Other**

2

3  5 Jeremy C. Moore,
   *Moore's Fed. Prac.* § 23.21 (3rd ed. 2001)........................................................10

4

5  7A Wright, Miller & Kane,
   *Fed. Prac. & Proc. Civil 3d* § 1760 (3rd ed. 2005) ...........................................11

6

7  C. Wright, A Miller & M. Kane,
   *Federal Prac. & Proc. Civil 2d* § 1754 (1986) ....................................................9

8

9  H. Newberg,
   *Newberg on Class Actions* § 1115(b) (1st Ed. 1977) ..........................................17

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

I.    **INTRODUCTION**

The Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq.* ("TCPA") is "aimed at protecting recipients from the intrusion of receiving unwanted communications." *St. Paul Fire & Marine Ins. Co. v. Onvia, Inc.*, 2007 U.S. Dist. LEXIS 11650, *11 (W.D. Wash. Feb. 16, 2007).  Indeed, the U.S. Supreme Court has noted that consumers are outraged over the proliferation of automated telephone calls that are intrusive, nuisance calls, found to be an invasion of privacy by Congress. *See Mims v. Arrow Fin. Servs. LLC,* 132 S. Ct. 740, 745 (U.S. 2012).

As the United States Supreme Court has observed, "[c]lass actions serve an important function in our system of civil justice." *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 99 (1981). "Class actions also may permit the plaintiffs to pool claims which would be uneconomical to litigate individually." *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 809 (1985). In *Shutts*, the Court found that "most of the plaintiffs would have no realistic day in court if a class action were not available" where damages were about $100. *Id*. As explained in *Karen S. Little, L.L.C. v. Drury Inns, Inc.*, 306 S.W.3d 577, 584 n. 5 (Mo. Ct. App. 2010), approximately fifty courts have certified TPCA class actions as of 2010.  This is not including the recent TCPA class actions certified in California District Courts. *See Lee v. Stonebridge Life Ins. Co.*, 2013 U.S. Dist. LEXIS 19774 (N.D. Cal. Feb. 12, 2013); *Lemieux v. Schwan's Home Serv.*, 2013 U.S. Dist. LEXIS 127032 (S.D. Cal. Sept. 5, 2013); *Stern v. DoCircle, Inc.*, 2014 U.S. Dist. LEXIS 17949 (C.D. Cal. Jan. 29, 2014).

This putative class action centers on a few simple allegations which, if found to be true, constitute numerous violations of the TCPA. Muhammed Abdeljalil ("Mr. Abdeljalil") and Richard Springer ("Mr. Springer," or jointly "Plaintiffs") allege that GE Capital Retail Bank ("GE" or "Defendant") placed artificial or prerecorded voice calls to the cellular telephone of Plaintiffs and putative class members (who are not customers of Defendant) without their prior express consent, in violation of 47 U.S.C. § 227(b)(1)(A)(iii).  Claims under the TCPA, such as the ones in this case,

make ideal class actions because the putative class members suffer the same injury in the same manner. Therefore, Mr. Springer[1] moves this Court to certify a nationwide TCPA class action against Defendant and submits that the requirements of Fed. R. Civ. P. 23(a) and Fed. R. Civ. P. (b)(2) and (b)(3) are satisfied.

## II.     PROCEDURAL BACKGROUND

The Complaint was filed on August 22, 2012 (Dkt. No. 1), a First Amended Complaint was filed on September 27, 2012 (Dkt. No. 9), and with leave of Court a Second Amended Complaint was filed on October 17, 2012 (Dkt. No. 12). Defendant filed a motion to dismiss class allegations in the Second Amended Complaint, which was denied without prejudice on August 2, 2013 (Dkt. No. 29). With leave of Court, Plaintiffs filed a Third Amended Complaint ("TAC") on August 22, 2013 (Dkt. No. 34). Defendant answered the TAC on September 11, 2013 (Dkt. No. 39) and filed a First Amended Answer on November 4, 2013 (Dkt. No. 48). Pursuant to the Court's Second Amended Case Management Order, the deadline to file a motion for class certification is April 28, 2014 (Dkt. No. 57).

## III.    FACTUAL BASIS FOR CLASS CERTIFICATION

According to Defendant's representative pursuant to Rule 30(b)(6), Martha Koehler ("Ms. Koehler"), who is responsible for litigation research for Defendant since 2002 (*see* Martha Koehler Deposition Transcript ("Koehler Depo."), 7:15-22; 11:2-12:1)), Defendant makes calls to collect debts on alleged delinquent accounts (*id*. at 28:15-18), where information to open an account is submitted electronically to Defendant by customers of Defendant (*id*. at 16:20-17:5). These debt collection calls are placed by Defendant's ███████████████████████████ ██████████████████████████ dialer (*see* Randall Majerczak Deposition

---

[1] Plaintiff Muhammed Abdeljalil intends to voluntarily dismiss his claims in this action without prejudice, and therefore, only Mr. Springer seeks class certification.

[2] ████████████████████████ Majerczak Depo. at 33:4-9.

Kazerouni Law Group, APC
Costa Mesa, California

Transcript ("Majerczak Depo."), 32:16-21,[3] including the telephone number of Mr. Springer (*id*. at 32:22-25; Exhibits I (Response to Interrogatory No. 6) and L (Response to RFA No. 9)).[4]   Defendant has records of even attempted calls. Koehler Depo., 80:19-81:5.

As of December 31, 2013, GE had approximately ▮▮▮▮▮▮ accounts on the electronic customer accounts system called the ▮▮▮▮▮▮. *Id*. at 100:3-9.[5] When Defendant's representatives speak with a person called by Defendant for debt collection purposes, the representatives maintain ▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮ (*id*. at 40:19-25) in the ▮▮▮▮▮ portion (*id*. at 30:3-13; *see also* 39:25-40:5)[6] of the ▮▮▮▮▮ (*id*. at 24:18-25:19, 25:20-26:23).[7] Defendant's electronic records indicate when a call was placed using the ▮▮▮ dialer, as identified in GE's ▮▮▮▮▮ by the term "PTR" (*id*. at 31:7-32:10, 79:13-22), and Defendant's records are searchable for the term "PTR." *See* Daniel Kelly Deposition Transcript ("Kelly Depo."), 25:5-11.

During the class period, it has been Defendant's policy ▮▮▮▮▮▮▮

---

[3] Randall Majerczak ("Mr. Majerczak") manages the dialing system for Defendant ("Majerczak Depo., 11:7-9), which is a different dialer than the one at issue here used by ▮▮▮▮. Mr. Majerczak testified as Defendant's representative pursuant to Fed. R. Civ. P. 30(b)(6).

[4] Plaintiff's technology consultant has opined that the dialer used by Adeptra is an ATDS as defined by § 227(a)(1) of the TCPA. *See* Exhibit A, ¶ 13 (Amended Report of Plaintiffs' Designated Expert Witness Jeffrey Hansen Pursuant to Fed. R. Civ. P. 26(a)(2)(b)). However, Mr. Springer recognizes that this is ultimately a merits issue.

[5] ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Koehler Depo., at 55:3-7, 55:20-56:7.

[6] The Information Services Team Manager for GE, Jodi Fisher, testified that the ten-digit telephone number on page 23 of the document production from GE was part of the ▮▮▮▮▮ in the ▮▮▮▮▮. *See* Exhibit D (Transcript for Deposition of Jodi Fisher, 7:6-13, 14:7-18).

[7] ▮▮▮▮▮ Majerczak Depo., 35:15-36:25. ▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ *Id*. at 37:14-25.

Kazerouni Law Group, APC
Costa Mesa, California

Kazerouni Law Group, APC
Costa Mesa, California

1　████████████████████████ (Koehler Depo. at 37:18-38:6);

2　████████████████████████████████████

3　████████████████████████████████████

4　████████████████████████████████████

5　███████████████████████ *See id.* at 83:23-84:15, 92:23-25, 93:1-

6　12; Exhibit M (GECRB 00005-6). ████████████████████

7　██████████████ before placing debt collection calls. *See* Koehler

8　Depo. at 45:15-22.

9　　　　Defendant here called Mr. Springer 25 times. *See* Exhibits G (GECRB

10　00005-6) and J (Response to Interrogatory No. 11); *see also* Koehler Depo., 76:13-

11　24; 77:25-78:4. The first ████ dialer call to Mr. Springer was on October 2, 2012, at

12　approximately 12:37 p.m. *Id.* at 76:13-24, 78:5-11, 79:1-6. Defendant placed at

13　least twenty-three ████ calls to Mr. Springer's cellular telephone number after

14　Defendant was aware that the telephone number was assigned to someone other

15　than an actual customer[9] of Defendant, as Defendant's ██████ at approximately

16　8:00 p.m. on October 2, 2012 for a redacted account indicate that Mr. Springer's

17　telephone number ending in 9149 belonged to a third party. The ████████

18　specifically state: "ANI#[xxxxxx]9149OTHER CALL THIRD PARTY (UN-

19　AUTHORIZED)." Exhibit G; *see also* Koehler Depo. at 77:25-78:4, 93:25-94:11.[10]

20　Below that line in the ████████ is the language "1ST NOTICE OF INCORRECT

21　HOME#." Exhibit G.  Prior to October 2012, Mr. Springer did not provided his

---

23　[8] Defendant does not call third parties such as attorneys and consumer credit

24　counselors via the ████ dialer. Koehler Depo., at 101:5-8.

24　[9] Defendant was attempting to reach a person by the name of Renee in calling his

25　cellular telephone number ending 9149 (*see* Exhibit F (Deposition Transcript for

26　Richard Springer ("Springer Depo."), 33:17-22; 34:7-11; 37:14-40:13)), and Mr.

27　Springer does not know this person by the name of Renee (*id.* at 33:23-25).

27　[10] ████████████████████████████████████

28　█████████ (Koehler Depo., 79:23-80:9), ███████████████████

　　██████████ (*id.* at 89:17-92:4).

cellular telephone number (ending 9149) to Defendant for purposes of receiving calls on his cell phone number, and did not provide his cell phone number to Defendant prior to October 2, 2012, for any purpose. *See* Exhibit K (Response to RFA No. 21); Declaration of Richard Springer ("Springer Decl."), ¶¶ 5 and 6. Mr. Springer applied for a Wal-Mart credit card through Defendant on or about November 1, 2012. *Id.* ¶ 3. Mr. Springer was not a customer of Defendant at the time of the calls between October 2, 2012 and October 10, 2012 (*see* Exhibit G; Springer Decl., ¶¶ 4-6; *see also* Koehler Depo. at 69:15-70:25), and therefore, Defendant cannot show prior express consent to call Mr. Springer.

As of February 5, 2014, Defendant had not queried the ▮▮▮▮▮▮▮▮, including the ▮▮▮▮▮, for calls to third parties. *See* Koehler Depo., 97:1-98:7, 100:14-101:4, 101:9-17, 105:10-24, 111:24-112:6. Although Defendant's employee Daniel Kelly ("Mr. Kelly")[11] opined that the ▮▮▮▮▮▮▮ could only be searched going back six months from the date of the search (Kelly Depo. at 25:12-26:3), Mr. Kelly's testimony was equivocal, as Mr. Kelly admitted that he had not worked on or looked at the ▮▮▮▮▮▮ for approximately ten years (*Id.* at 11:5-7) and later testified that he does not know ▮▮▮▮▮▮▮▮▮▮▮, and merely believes that the data may be inaccessible due to the size of the data when searching past six months (*see Id.* at 46:5-15, 46:25-47:11). Mr. Kelly has not conducted analysis regarding the ▮▮▮▮▮▮. *Id.* at 12:16-20. Mr. Kelly also testified that specific questions regarding data warehousing should be directed to the data warehouse team. *Id.* at 47:12-25.[12] Mr. Kelly testified that the ▮▮▮▮▮ ▮▮▮▮▮▮▮▮ that can theoretically be searched for specific terms such as "third party." *See id.* at 35:18-24, 36:2-11, 37:7-9, 37:24-41:21; 42:6-22.

---

[11] Mr. Kelly has been the Collections Information Services Manager and Operations Analyst for Defendant for three years. Kelly Depo., 6:13-16, 7:4-6.

[12] Defendant's records are searchable by time (Kelly Depo., 30:11-14, 31:1-3) ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ *Id.* at 14:21-15:3.

Kazerouni Law Group, APC
Costa Mesa, California

Mr. Springer can show that his situation here is not unique, and that many persons similarly situated received artificial or prerecorded ATDS calls on their cell phones without prior express consent[13] according to Defendant's own business records. Mr. Springer and the putative class members received one or more calls from Defendant even after Defendant was informed that they had called a telephone number for a third party (i.e., someone other than the person Defendant was attempting to call to collect an alleged debt; a non-customer).[14]   Defendant admits that it has placed debt collection calls, on occasion, to non-customers. Koehler Depo., 37:3-17. About ███████ of Defendant's debt collection calls are made using the ███ dialer. *Id.* at 102:16-18.

Therefore, based upon these facts and allegations in the TAC, Plaintiff believes that a 47 U.S.C. § 227(b)(1)(A)(iii) Class is justified here, consisting of:

> All persons within the United States who had or have a number assigned to a cellular telephone service, who received at least two calls using an automatic telephone dialing system and/or an artificial or prerecorded voice from Defendant or its agent between August 22, 2008 and August 22, 2012 for debt collection purposes, who were not customers of Defendant at the time of the calls, where Defendant's customer account records indicate that prior to the second and any subsequent calls that said persons were non-account holders as identified by one or more of the following terms in Defendant's electronic customer account records: "wrong number," "wrong telephone number," "incorrect number," "incorrect telephone number," "third party," "third party number," "third party telephone number," "third party contact," "wrong party," "wrong party number," or "wrong party telephone number."[15]

---

[13] *See* Springer Decl., ¶ 7.

[14] Magistrate Judge Dembin's Case Management Order Regulating Discovery in this case was extraordinarily limited in scope. *See* Dkt. No. 50.

[15] When Plaintiffs requested through written discovery that Defendant perform searches for these specific terms and provide the results, Defendant merely

Kazerouni Law Group, APC
Costa Mesa, California

Excluded from the Class are persons who Defendant called for emergency purposes and persons who gave prior express consent to Defendant to call their cellular telephone number prior to Defendant through its agent ███ first placing a call using an automatic telephone dialing system and/or an artificial or prerecorded voice. This class definition is narrower than the definition proposed in the TAC at ¶ 31.[16] Based upon the allegations in the TAC, the evidence obtained thus far, and evidence that will likely be obtained through further discovery, class certification of Mr. Springer's single TCPA claim is appropriate.

## IV.     TELEPHONE CONSUMER PROTECTION ACT

Congress enacted the TCPA in 1991 amidst an unprecedented increase in the volume of telemarketing calls to consumers in America, as the TCPA combats the threat to privacy being caused by the automated practices, stating it is unlawful: "(A) to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice. . . (iii) to any telephone number assigned to a … cellular telephone service …" 47 U.S.C. § 227(b)(1)(A)(iii) (emphasis added).

The TCPA's prohibition at issue requires the calls to be made with an artificial or prerecorded voice or through an automatic telephone dialing system ("ATDS"), which Congress defines as "equipment which has the *capacity* (A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." 47 U.S.C. § 227(a)(1) (emphasis

provided objections and no substantive response. *See* Exhibit N; Kazerounian Decl., ¶ 26.

[16] The class definition can be modified prior to certification. *See Irwin v. Mascott*, 2001 U.S. Dist. LEXIS 3285, *12 (N.D. Cal. Feb. 27, 2001) ("it may become necessary to modify the class definition after further discovery or other events which alter the parameters of the class."); *McPhail v. First Command Fin. Planning, Inc.*, 247 F.R.D. 598, 608 (S.D. Cal. 2007) (court modified class definition proposed by the plaintiffs in their motion for class certification).

Kazerouni Law Group, APC
Costa Mesa, California

added).

To demonstrate a TCPA violation, Mr. Springer need only show that Defendant (1) placed a call using an automatic telephone dialing system or an artificial or prerecorded voice; (2) to any telephone number assigned to a cellular telephone service; (3) without the prior express consent of the called parties. 47 U.S.C. § 227(b)(1)(A)(iii). Section 227(b)(1)(A) of the TCPA expressly applies to "any call" made using an ATDS. 47 U.S.C. § 227(b)(1)(A). The Ninth Circuit has held that this section of the TCPA should be analyzed as a content-neutral regulation. *Moser v. F.C.C.*, 46 F.3d 970, 973 (9th Cir. 1995).[17] A single call using an ATDS or an artificial or prerecorded voice without prior express consent violates the TCPA. *See Maier v. J. C. Penney Corp.*, 2013 U.S. Dist. LEXIS 84246, *11 (S.D. Cal. June 13, 2013) (denying motion to dismiss where plaintiff alleged she received a single unlawful text message); *Lemieux*, 2013 U.S. Dist. LEXIS 127032 at *20 (certifying a TCPA class action where one of the named plaintiffs allegedly received a single autodialed call on his cell phone).

The Ninth Circuit has defined "express consent" to mean "clearly and unmistakably stated," *Satterfield v. Simon & Schuster, Inc.,* 569 F.3d 946, 955 (9th Cir. 2009). Prior express consent is an affirmative defense for which the TCPA defendant bears the burden of proof. *See Grant v. Capital Management Services, L.P.,* 2011 WL 3874877, at *1, n.1. (9th Cir. Sept. 2, 2011) ("express consent is not an element of a TCPA plaintiff's prima facie case, but rather is an affirmative defense for which the defendant bears the burden of proof").

The TCPA sets statutory damages in the amount of $500 per negligent violation and $1,500 per willful or knowing violation, and also provides for injunctive relief. 47 U.S.C. § 227(b)(3)(A-B).

---

[17] *See also Robbins v. Coca-Cola-Company*, 2013 U.S. Dist. LEXIS 72725, *6 (S.D. Cal. May 22, 2013) ("the language of the TCPA [regarding § 227(b)(1)(A)] makes no reference to the time, content, sequence, or volume of calls").

## V.     RULE 23 STANDARDS AND CLASS CERTIFICATION ANALYSIS

Rule 23 governs the certification of class actions and has as main objectives the efficient resolution of the claims or liabilities of many individuals in a single action as well as the elimination of repetitious litigation and possibly inconsistent adjudication. See *Califano v. Yamaki*, 442 U.S. 682, 700-01 (1979); C. Wright, A. Miller & M. Kane, *Federal Prac. & Proc. Civil 2d* at § 1754 (1986).  District courts are afforded broad discretion in determining whether an action should be certified. *Montgomery v. Rumsfeld*, 572 F.2d 250, 255 (9th Cir. 1978).  Rule 23 outlines a two-step process for determining whether class certification is appropriate.  First, Rule 23(a) sets forth four conjunctive prerequisites that must be met for any class: (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class. *See* Fed. R. Civ. P. 23(a); *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992).

These requirements are referred to as numerosity, commonality, typicality, and adequacy. *See Thompson v. Clear Channel Communs., Inc. (In re Live Concert Antitrust Litig.)*, 247 F.R.D. 98, 105 (C.D. Cal. 2007). Once subdivision (a) is satisfied, the party seeking certification must demonstrate that the action falls into one of three categories under Rule 23(b). *See In re Adobe Sys., Inc. Sec. Litig.*, 139 F.R.D. 150, 153 (N.D. Cal. 1991).

A plaintiff must show compliance with the prerequisites of Rule 23(a) under a rigorous analysis. *See Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2552 (U.S. 2011). However, "[i]n determining the propriety of a class action, the question is not whether the plaintiff … ha[s] stated a cause of action or will prevail on the merits, but rather whether the requirements of Rule 23 are met." *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 178 (U.S. 1974) (emphasis added). "Sometimes the issues are plain enough from the pleadings to determine whether the interests of the absent parties are

Kazerouni Law Group, APC
Costa Mesa, California

fairly encompassed within the named plaintiff's claim…" *General Telephone Co. of Southwest v. Falcon*, 457 U.S 147, 160 (1982).

Class actions are essential to enforce laws protecting consumers. Indeed, the Ninth Circuit recently affirmed preliminary approval of a TCPA injunctive relief class in *Meyer v. Portfolio Recovery Associates, LLC*, 2012 WL 4840814 (9th Cir. Oct. 12, 2012). Other courts have recently certified similar TCPA class actions. *See Lemieux*, 2013 U.S. Dist. LEXIS 127032; *Lee,* 2013 U.S. Dist. LEXIS 19774; *Stern*, 2014 U.S. Dist. LEXIS 17949.

**A.     The Proposed Class Of Non-Customers of Defendant Autodialed Or Called With A Prerecorded Voice Is Adequately Defined And Clearly Ascertainable**

"Although there is no explicit requirement concerning the class definition in FRCP 23, courts have held that the class must be adequately defined and clearly ascertainable before a class action may proceed.'" *Schwartz v. Upper Deck Co.*, 183 F.R.D. 672, 679-80 (S.D. Cal. 1999) (quoting *Elliott v ITT Corp.*, 150 F.R.D. 569, 573-74 (N.D. Ill. 1992)). "The class definition 'must be sufficiently definite so that it is administratively feasible to determine whether a particular person is a class member.'" *Shaw v. BAC Home Loans Servicing, LP*, 2011 U.S. Dist. LEXIS 149416, 4-5 (S.D. Cal. Dec. 29, 2011). "A class is ascertainable if it identifies a group of unnamed plaintiffs by describing a set of common characteristics sufficient to allow a member of that group to identify himself or herself as having a right to recover based on the description." *Moreno v. Autozone, Inc.*, 251 F.R.D. 417, 421 (N.D. Cal. 2008). "[T]he identity of class members must be ascertainable by reference to objective criteria." 5 Jeremy C. Moore, Moore's Fed. Prac., § 23.21[1], p. 23-57 (3rd Ed. 2001).   A class may be certified even though the court cannot identify every potential member at the moment of certification. *See Santillan v. Ashcroft*, 2004 U.S. Dist. LEXIS 20824 (N.D. Cal. Oct. 12, 2004).  As long as "the general outlines of the membership of the class are determinable at the outset of the litigation, a class will be

Kazerouni Law Group, APC
Costa Mesa, California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

MEMO. OF P. & A. IN SUPP. OF PL.'S MOT. FOR CLASS CERTIFICATION PURSUANT TO FED. R. CIV. P. 23(B)(2) AND (B)(3);
CASE NO.: 12-CV-02078-JAH-MDD                 10

deemed to exist." 7A Wright, Miller & Kane, Federal Practice & Procedure, Civil 3d § 1760 at 118 (3 ed. 2005).

Class membership here may be readily determined by objective criteria, namely, whether (i) Defendant ████ ████ ███ (ii) placed any call (iii) to the cellular telephone of (iv) non-customers (v) using an ATDS and/or with an artificial or prerecorded voice (vi) without their prior express consent (vi) between August 22, 2008 and August 22, 2012.  Such objective information can be readily determined using Defendant's business records.[18]

### 1.    Step One: Obtain Outbound Dial List For IVR Dialer Calls

Defendant keeps records of artificial or prerecorded calls for debt collection purposes via the ███ dialer ███████████████ to telephone numbers provided by Defendant. *See* Majerczak Depo., 32:16-21, 35:15-36:25, 37:14-25. Thus, the first step is to obtain a list of the telephone numbers called via the IVR system used by ████ during the class period.

### 2.    Step Two: Search CIS Notes For Non-Account Holders

Defendant keeps records of conversations with the individuals called by ███████████ GE for debt collection purposes, as reflected in the ████ portion of Defendant's customer account records in the ██████. *See id.* at 32:16-25; 80:19-81:5. ████████████████████ ████████████████████ (Koehler Depo., 40:19-25), ██████████████ may theoretically be searched using special coding for terms such as "wrong number," "wrong telephone number," "incorrect number," "incorrect telephone number," "third party," "third party number," "third party telephone number," "third party contact," "wrong party," "wrong party number," or

---

[18] *See Hofstetter v. Chase Home Fin., LLC*, 2011 U.S. Dist. LEXIS 38124, 34 (N.D. Cal. Mar. 31, 2011) ("All the parameters for membership in this class are objective criteria, and defendants' business records should be sufficient to determine the class membership status of any given individual.").

Kazerouni Law Group, APC
Costa Mesa, California

"wrong party telephone number." *See* Kelly Depo., 35:18-24, 36:2-11, 37:7-9, 37:24-41:21; 42:6-22. As it concerns the calls to Plaintiff, the ████████ indicate that the call was "OTHER CALL THIRD PARTY (UN-AUTHORIZED)" on October 2, 2012. Exhibit G, p. 2.

Mr. Kelly expressed uncertainty as to whether Defendant's data can be searched going back more than six months (*see id*. at 46:25-47:11); however, there is no firm evidence that the ████████ in the ████████ cannot be searched going back more than six months, and a sophisticate company such as GE would likely need such capability in order to conduct its business. Notably, Defendant was able to pull up the account records for telephone number ending 9149, which account records indicate PTR calls (i.e., autodialer calls) to Plaintiff going as far back as October 2, 2012 (*see* Exhibit G), where Plaintiff's discovery requests regarding such data were served on December 16, 2013 (Kazerouian Decl., ¶ 19).

Thus, the second step is to search the ████████ for terms to identify calls using the IVR system to *third parties* (i.e., persons other than the those Defendant was attempting to call for debt collection purposes) who are not GE's customers.

### 3.   Step Three: Scrub The Calls For Cell Phone Numbers Only

Section 227(b)(1)(A)(iii) applies to calls to *cellular* telephones, not calls to *residential* telephones. ████████████████████████████ ████████ (Koehler Depo., 45:10-22), ████████████████████ ████████████████████████████████████ (*id*. at 37:18-38:6), the third step will be to scrub the list of telephone numbers for IVR calls to cellular telephone numbers only after narrowing the list of calls to third parties, as identified by the search terms proposed in the class definition above. Mr. Springer's technology consultant, Jeffrey Hansen, is capable of scrubbing an outbound dial list of calls placed through the dialer system. *See* Declaration of Jeffrey Hansen ("Hansen Decl."), ¶¶ 5-11, filed concurrently. This scrubbing process, to determine the frequency of calls to each unique cellular telephone

Kazerouni Law Group, APC
Costa Mesa, California

number, will indicate which third party (i.e., non-account holders) calls were to unique cellular telephones only, and will take anywhere from approximately three weeks to less than a day depending on how many telephone numbers are on the list to be scrubbed. *See id.* at ¶ 11.

### 4.   Step Four: Identify Second and Subsequent Calls To Non-Account Holders (The Actionable Calls)

Plaintiff elects to pursue class certification for only the second and subsequent calls to cellular telephone numbers after Defendant was on notice that the telephone numbers were assigned to a third party contact (i.e., not a customer of Defendant that Defendant was attempting to reach for debt collection purposes), as the second and any subsequent calls are a clear violation of the TCPA. It was GE's policy ██████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████ *See* Koehler Depo., 83:5-84:15; 92:23-25; 93:1-12.

These actionable calls will be cross-referenced with name and address information from public records such as reverse telephone number lookup, which method was approved by this Court in *Barani v. Wells Fargo Bank, N.A.*, 2014 U.S. Dist. LEXIS 49838, *27 (S.D. Cal. Apr. 9, 2014).  Such plausible methods, as well as public notice and/or use of a call center (*see In re Nissan Motor Corp. Antitrust Litigation,* 552 F.2d 1088, 1097 (5th Cir. 1977)), will be used to identify Class members in this case, which is all that is required at the class certification stage. *See Negrete v. Allianz Life Ins. Co. of N. Am.*, 238 F.R.D. 482, 494-95 (C.D. Cal. 2006) ("plaintiffs need only show that their proposed methods are plausible.") Mr. Springer has thus identified the general outlines of class membership, and it is certainly administratively feasible for the parties to review documentation maintained by Defendant in electronic searchable format, as well as documentation to be provided by Defendant in electronic searchable format (i.e., the outbound dial

Kazerouni Law Group, APC
Costa Mesa, California

list from Adeptra), which is a limited, basic inquiry made relatively simply through the use of technology. *See Spencer v. Beavex, Inc.*, 2006 U.S. Dist. LEXIS 98565, *19 (S.D. Cal. Dec. 15, 2006) ("[A] proposed class must be clearly defined so that it is administratively feasible for a court to determine whether a particular individual is a member.") (internal quotations omitted).

Therefore, the class definition is adequately defined and the class members are clearly ascertainable according to objective criteria based on GE's own business records.

### B.    Numerosity

Under Rule 23(a), the class must be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1); *Staton v. Boeing Co.*, 327 F.3d 938, 953 (9th Cir. 2003).  There is no magic number that satisfies the test of impracticability of joinder and thus each case stands on its own particular facts. *Bruce v. Christian*, 113 F.R.D. 554, 556 (S.D.N.Y. 1986).

Defendant had approximately ▮▮▮▮ accounts as of December 31, 2013 (Koehler Depo., 100:3-9), and approximately ▮▮▮▮ of the debt collection calls are placed via the ▮▮ dialer (*id.* at 102:11-18). Defendant also admits that it has called third parties, although perhaps inadvertently. *Id.* at 37:3-17.  Based on the massive number of accounts, even if only ten percent of the accounts were delinquent at some point where Defendant placed a debt collection call to such accounts through the ▮▮ dialer, and assuming further that only one percent of such calls were to third parties, Defendant would have still called ▮▮▮ persons.[19] A class size of thousands would certainly satisfy the numerosity prerequisite. *See Mendoza v. Home Depot, U.S.A., Inc.*, 2010 U.S. Dist. LEXIS 13025, *13 (C.D. Cal. Jan. 21, 2010) ("Given the large number of potential plaintiffs, the Court finds that the numerosity requirement of Rule 23(a) is readily satisfied."). Where the

[19] ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

Kazerouni Law Group, APC
Costa Mesa, California

exact size of the class is unknown but general knowledge and common sense indicate that it is large, the numerosity requirement is satisfied. *Charlebois v. Angels Baseball, L.P.*, 2011 U.S. Dist. LEXIS 71452, 2011 WL 2610122, * 4 (C.D. Cal. June 30, 2012).[20] "As a general rule, 'classes of 40 or more are numerous enough.'" *Makaeff v. Trump Univ., LLC*, 2014 U.S. Dist. LEXIS 22392, *22 (S.D. Cal. Feb. 21, 2014) (quoting *Ikonen v. Hartz Mountain Corp.*, 122 F.R.D. 258, 262 (S.D. Cal. 1988) (internal quotations and citations omitted)).

Taking a common sense approach here, the number of class members is likely to far exceed forty individuals and is so numerous that this action should be maintained as a class action because many separate, yet nearly identical, TCPA actions would be economically and judicially impracticable.

## C.   Commonality

Rule 23(a)(2) requires there be at least one common question of law or fact to certify a class. A class has sufficient commonality "if there are questions of fact and law which are common to the class" *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1988) (quoting Fed. R. Civ. P. 23(a)(2)). Commonality focuses on whether certification will offer a more economical approach to resolving the underlying disputes than would individual litigation. *Falcon*, 457 U.S. at 155. "Plaintiffs need not demonstrate that all questions are common to the class; [as there need only be]…'a common core of salient facts coupled with disparate legal remedies within the class' are present." *Ellis v. Costco Wholesale Corp.*, 285 F.R.D. 492, 506 (N.D. Cal. 2012) (citing *Hanlon*, *supra*, *at* 1019-20).

Commonality requires a "common contention of such a nature that it is capable of classwide resolution-which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims

---

[20] "As Plaintiff recognizes, '[t]he court is able to make common-sense assumptions in determining numerosity.'" *Gusman v. Comcast Corp.*, 2014 U.S. Dist. LEXIS 46956, *9 (S.D. Cal. Apr. 2, 2014) (quoting *McCabe v. Crawford & Co.*, 210 F.R.D. 631, 644 (N.D. Ill. 2002)).

*Kazerouni Law Group, APC*
Costa Mesa, California

in one stroke." *Dukes*, 131 S. Ct. at 2551. Where questions of law involve "standardized conduct of the defendants towards members of the proposed class, a common nucleus of operative facts is typically presented, and the commonality requirement...is usually met." *Franklin v. City of Chicago*, 102 F.R.D. 944, 949 (N.D. Ill. 1984). Class certification is appropriate where the "classwide proceeding [will] generate common answers apt to drive the resolution of the litigation." *Dukes*, 131 S.Ct. at 2551.

Defendant here engaged in a common course of conduct towards Mr. Springer and the class members by placing ATDS and/or prerecorded voice calls to cell phones of non-customers without their prior express consent (TAC ¶¶ 31, 33), knowing that Defendant had called third parties (even if Defendant had not intended to call cellular telephone numbers), as mentioned above. *See Ritchie v. Van Ru Credit Corp.*, 2014 U.S. Dist. LEXIS 31934, *7 (D. Ariz. Mar. 12, 2014) ("There is complete identity of common factual and legal issues: the central question is whether Defendants violated the TCPA by calling putative class members.")

The common questions of law and fact in this TCPA case include, but are not necessarily limited to: (1) whether Defendant placed ATDS and/or artificial or prerecorded voice calls via ███████ dialer; (2) to the cellular telephones numbers; (3) of non-customers of Defendant; (4) who had not provided their prior express consent; (5) where Defendant was on notice that Defendant was calling a third party according to Defendant's ███████ in their ███████ (*see* TAC, ¶ 36). *See Lemieux*, 2013 U.S. Dist. LEXIS at *17-18 ("The Court finds there are question of law and fact common to the class, including: (1) whether Defendants used an ATDS or artificial/prerecorded voice, (2) to call (3) NutriSystem customers' cell phones, (3) for non-emergency purposes, and (4) without the customers' prior express consent."); *Ellison v. Steven Madden*, LTD, 11-CV-5935-PSG (AGRx) (C.D. Cal. Sept. 25, 2012) ("the material issue in the case, whether Defendant sent unsolicited, automated text message advertisements to class members, is a question that is

common to the entire class. Therefore, the shared attributes of the claim would be the main focus of the litigation.") (Exhibit H, p. 4).

Certifying this case as a class action would reduce the burden on the courts that would arise from many separate, yet virtually identical TCPA claims; would avoid duplicate discovery requests; would provide an efficient method for prompt resolution of the issue regarding the propriety of Defendant's conduct; and would likely result in a more expedient recovery for class members who would not have to seek individual legal representation once they were to become aware of their rights against Defendant, if at all. *See* TAC ¶ 40.

Since Mr. Springer's claim arises from Defendant's calling practices for debt collection purposes, as described above, nearly all of the issues of law and fact are common to the Class, and certifying this case as a class action will produce common answers sought by the parties, including Defendant. *See* TAC ¶ 36. Further discovery will permit Plaintiff to determine exactly how many actionable calls were placed to unique cellular telephone numbers of non-customers of Defendant who had not previously expressed consent to receive such calls where Defendant was on notice it was calling a third party.

Therefore, the commonality prerequisite is easily satisfied here.

### D.   Typicality

Rule 23(a)(3) requires that the claims of the representative parties be typical of the claims of the class. The typicality requirement serves to "assure that the interest of the named representative aligns with the interests of the class." *Hanon,* 976 F.2d at 508. Typicality refers to the *nature* of the claim or defense of the class representative and not on facts surrounding the claim or defense. *Id.* (Italics added.)  A claim is typical if it "arises from the same event or practice or course of conduct that gives rise to the claims of other class members and . . . [is] based on the same legal theory." H. Newberg, *Newberg on Class Actions* § 1115(b) (1st Ed. 1977). The burden imposed by the typicality requirement is not great. *See id.* at 1020. Typicality is met if the

Kazerouni Law Group, APC
Costa Mesa, California

claims of each class member arise from the same "course of conduct" (*Armstrong v. Davis*, 275 F.3d 849, 869 (9th Cir. Cal. 2001), and the defendant's liability turns on "similar legal argument" (*Id.* at 868.))  The typicality focuses on a comparison of the named plaintiffs' claims with those of the class. *Id.* at 868-69. "[T]he injuries [must] result from the same, injurious course of conduct." *Id.* at 869.

"[W]hen the commonality prong is satisfied under Rule 23(a)(2), the typicality prong…generally follows suit." *Harris v. Circuit City Stores, Inc.*, 2008 U.S. Dist. LEXIS 12596 (N.D. Ill. Feb. 7, 2008). Typicality "should be determined with reference to [the defendant's] actions, not with respect to particularized defenses it might have against certain class members." *Wagner v. Nutrasweet Co.*, 95 F.3d 527, 534 (7th Cir. Ill. 1996). Typically is established in a TCPA class where a the "plaintiff brings the same TCPA claim that will be advanced by the class." *Holtzman v. Turza*, 2009 U.S. Dist. LEXIS 95620, *13 (N.D. Ill. Oct. 14, 2009) (citing *G.M. Sign, Inc. v. Franklin Bank, S.S.B.*, 2008 U.S. Dist. LEXIS 79827 (N.D. Ill. Aug. 20, 2008)).

Mr. Springer's TCPA claim is typical of those of the Class members. The harm suffered by Mr. Springer, the proposed class representative, is identical to the harm suffered by the Class members, in that their statutory right to privacy (*see Meyer*, 696 F.3d at 951) was invaded by Defendant when Defendant called their cell phones using the IVR dialer (i.e., ATDS and/or artificial or prerecorded voice calls) while they were non-customers of Defendant at the time, without prior express consent. *See* TAC ¶ 37. Further, this case is similar to *Meyer v. Portfolio Recovery Assocs., LLC*, 707 F.3d 1036, 1041 (9th Cir. Cal. 2012) where the Ninth Circuit affirmed provisional class certification of an autodialed TCPA case

By virtue of Defendant's debt collection calling practices, Mr. Springer and each Class member (non-customers of Defendant at the time of the calls) suffered the same harm (i.e. their privacy rights under the TCPA were violated), in the same manner (specifically, the fact that the calls were to cell phones using prohibited

Kazerouni Law Group, APC
Costa Mesa, California

means, i.e. an ATDS and/or with a prerecorded voice), *see* TAC ¶¶ 13-38, where Defendant's own business records indicate it placed calls to third parties.

Each Class member claims statutory damages for invasion of a statutory right to privacy that resulted from Defendant's debt collection calls to non-customers. Thus, there is no danger the named Plaintiff, Mr. Springer, will be preoccupied with a unique defense (*see Hanon*, 976 F.2d at 508.), as the only possible defense here is the affirmative defense of prior express consent because the calls were not for an emergency purpose but rather for debt collection purposes (*see* 47 U.S.C. § 227(b)(1)(A)(iii)). Significantly, Defendant admits that it has called third parties for debt collection purposes, perhaps inadvertently, ███████████████████ ████████████████████████████████████ prior to placing the debt collection calls (*see* Koehler Depo., 45:10-22).

Thus, the typicality requirement is also satisfied here.

**E.     Adequacy of Representation**

The fourth requirement of Rule 23(a) is that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). Due process requires as much. *Hanlon*, 150 F.3d at 1020. The Court asks two questions: "(1) Do the representative plaintiffs and their counsel have any conflicts of interest with other class members, and (2) will the representative plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Staton v. Boeing Co.*, 327 F.3d at 957; Fed. R. Civ. P. 23(g)(1)(B).

Counsel for Mr. Springer will fairly, responsibly, vigorously, and adequately represent the interests of the Class members whose statutory rights under the TCPA were violated by Defendant. *See* TAC ¶¶ 37 and 39; Kazerounian Decl. at ¶¶ 3-12, 27-30; Swigart Decl., ¶¶ 3-18; Friedman Decl., ¶¶ 3-15. Mr. Springer shares the same interests of all Class members comprised of non-customers of Defendant who were all harmed in the same way by Defendant's debt collection calling practices. Mr. Springer also understands the duties of acting as class representative, including

*(left margin, vertical text)* Kazerouni Law Group, APC — Costa Mesa, California

that the responsibility to see that his legal counsel prosecute the case on behalf of the entire class, not just Mr. Springer. *See* TAC ¶ 37; Springer Decl., ¶ 4.

There are no known conflicts in this case (Kazerounian Decl., ¶ 31; Swigart Decl., ¶ 19; Friedman Decl., ¶ 17; Springer Decl., ¶ 9), and it is highly unlikely that a conflict would exist, given the common practice of Defendant, fixed statutory damages, and requested injunctive relief. *See Yoshioka v. Charles Schwab Corp.*, 2011 U.S. Dist. LEXIS 147483, *18 (N.D. Cal. Dec. 22, 2011) ("apart from [his] proposed incentive award, []he will receive the same relief as the class…and there is no apparent conflict of interest"). Plaintiff has retained competent class counsel experienced in TCPA litigation and class actions to represent the interests of the Class (Kazerounian Decl., ¶¶ 27-30; Swigart Decl., ¶¶ 13-18; Friedman Decl., ¶¶ 3-16) and is prepared to represent the class (Springer Decl., ¶ 8).

Therefore, the adequacy prerequisite has been satisfied.

**F.    Hybrid Class Certification Should Be Granted**

**1.    Rule 23(b)(2)**

Certification under Rule 23(b)(2) requires that "the party opposing the class has acted or refused to act on grounds that apply generally to the class so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b); *see also* TAC ¶ 38. An order awarding statutory damages and prohibiting Defendant from placing ATDS and/or artificial or prerecorded calls to non-customers' cellular telephones without prior express written consent would resolve Mr. Springer's complaint.[21] *See* Springer Decl., ¶ 10.

Here, Plaintiff and each Class member were harmed in the same manner, and may continue to be harmed, in the absence of an injunction, because Defendant

---

[21]

*See* Koehler Depo., 83:23-84:15, 92:23-25, 93:1-12.

Kazerouni Law Group, APC
Costa Mesa, California

would otherwise be free to continue its illegal practice of utilizing the likely profitable IVR dialer to place artificial or prerecorded debt collection calls without prior express consent, in violation of the TCPA. *See* TAC ¶ 44; *see also Meyer,* 707 F.3d at 1043-45 (affirming preliminary injunction in TCPA class action). Defendant could implement a policy to scrub[22] telephone numbers that Defendant intends to call for debt collection purposes to remove cellular telephone numbers prior to providing those number to the dialing company ████.

In *Yoshioka,* the court explained, "[t]he key to the (b)(2) class is the indivisible nature of the injunctive or declaratory remedy warranted—the notion that the conduct is such that it can be enjoined or declared unlawful only as to all of the class members or as to none of them." 2011 U.S. Dist. LEXIS at *20 (citing *Dukes,* 131 S. Ct. at 2557). This requirement was satisfied in *Yoshioka* because the requested relief, and the relief to be provided, would apply class-wide. *Id.*

Mr. Springer's requested remedy is the appropriate remedy for a class action under Rule 23(b)(2), which "applies only when a single injunction or declaratory judgment would provide relief to each member of the class" (*Dukes*, 131 S.Ct. at 2557), based upon Defendant's ATDS and/or artificial or prerecorded debt collection calls to non-customers. Therefore, class certification under Rule (b)(2) is necessary and appropriate here, as there is no assurance that Mr. Springer and others similarly situated will not by chance be called by Defendant on their cellular telephone number(s) by Defendant without their prior express consent, especially where Defendant ███████████████████████████████████████████████ ████████████████ (*see* Koehler Depo., 47:1-11).

### 2.   Rule 23(b)(3)

Rule 23(b)(3) requires that "questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and

[22] *See generally, Fillichio v. M.R.S. Assocs.*, 2010 U.S. Dist. LEXIS 112780, *14-15 (S.D. Fla. Oct. 19, 2010).

Kazerouni Law Group, APC
Costa Mesa, California

that a class action is superior to other methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3); *Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1175-76 (9th Cir. 2010). "The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Hanlon,* 150 F.3d at 1022. "Individual questions need not be absent." *Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802, 815 (7th Cir. Ill. 2012). "Court[s] looks at common factual link[s] between all class members and the defendants for which the law provides a remedy." *Abels v. JBC Legal Group, P.C.*, 227 F.R.D. 541, 547 (N.D. Cal. 2005). "Implicit in…the predominance test is…that the adjudication of common issues will help achieve judicial economy." *Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1234 (9th Cir. 1996). "Generally, when a class challenges a uniform policy or practice, the validity of the policy or practice tends to be the predominant issue in the ensuing litigation." *CE Design Ltd. v. Cy's Crabhouse North, Inc.*, 259 F.R.D. 135, 142 (N.D. Ill. 2009) (citing *Falcon*, 457 U.S. at 159 n.15).

The principal legal issue in this case is whether Defendant's alleged ATDS and/or artificial or prerecorded debt collection calls to non-customers violated the TCPA. *See Barani,* 2014 U.S. Dist. LEXIS 49838 at *9 ("The central inquiry is whether Wells Fargo violated the TCPA by sending text messages to the Class Members. Accordingly, the predominance requirement is met."). The only potential individual issue here is the identification of the Class members. This will be accomplished by a review of Defendant's records, public records, and other reasonable means such as public notice. The predominance of common legal and factual questions is evidenced in this case by the nature of Mr. Springer's single TCPA claim. Non-customers of GE, like Mr. Springer at the time of the unlawful calls, were called by Defendant using an ATDS and/or an artificial or prerecorded voice without prior express consent. Common questions dominate where defendant acted wrongfully in the same basic manner. *Martin v. Heinold Commodities, Inc.*, 139

Kazerouni Law Group, APC
Costa Mesa, California

Ill. App. 3d 1049, 1060 (1985).

GE has not provided any evidence of prior express consent to call Mr. Springer, and it cannot because Mr. Springer was not a customer of Defendant at the time of the calls. *See* Springer Decl., ¶¶ 3-7. Likewise, Defendant cannot provide evidence of prior express consent to call other non-customers for debt collection purposes using the IVR dialer. Defendant's policy ██████████████ ████████████████████████████████████████████████, as Defendant called Plaintiff's cell phone prior to Plaintiff becoming a GE customer. *See Id*. Thus, here "it appears that consent will be proved or disproved on evidence and theories applicable to the entire class." *Stern*, 2014 U.S. Dist. LEXIS at *20.

Importantly, the question of "prior express consent" (an affirmative defense)[23] in this TCPA action does not present an individualized issue because Defendant failed to obtain prior express consent to place the calls at issue to *non-customers*, which means that there is no need for any mini-trial on the merits because Defendant cannot produce evidence of prior express consent to call non-customers. *See Silbaugh v. Viking Magazine Servs.*, 278 F.R.D. 389, 393 (N.D. Ohio 2012) (without some evidence of individual consent, defendant cannot realistically argue that individual issues regarding consent prevent a finding of predominance). Any argument by Defendant that Mr. Springer and the Class gave Defendant prior express consent must fail, as a mistaken belief that a TCPA defendant has prior express consent is no defense because the TCPA is essentially a strict liability statute (*see Alea London Ltd. v. Am. Home Servs.*, 638 F.3d 768, 776 (11th Cir. Ga. 2011), and Plaintiff is only seeking certification of the second and any subsequent calls after Defendant was on notice it was calling third parties.

Also, Rule 23(b)(3) does not require that all issues of law and fact be subject to common proof, as even the rule itself recognizes that there may be some issues

---

[23] *See also Mashiri v. Ocwen Loan Servicing, LLC*, 2013 U.S. Dist. LEXIS 154534, *14 (S.D. Cal. Oct. 28, 2013).

Kazerouni Law Group, APC
Costa Mesa, California

that are individualized. *See Ellis*, 285 F.R.D. at 492 (recognizing that the predominance question is not one of scale; instead it is whether certification would achieve economies of time, effort, and expense, and promote uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results). Even if prior express consent were an individualized issue here, it is not, common issues as described above would still predominate. *See Dunn v. City of Chicago*, 231 F.R.D. 367, 375-76 (N.D. Ill. 2005) ("the existence of individualized defenses does not preclude class certification.")

There is clear justification here for handling this dispute under section (b)(1)(A)(iii) of the TCPA on a representative rather than an individual basis. The issues that make up Mr. Springer's single TCPA claim are common to the Class members, who have allegedly been injured in the same way and in virtually the same manner by Defendant's debt collection calling practices. Through a class action, the Court may resolve at once important common questions to which all parties seek an answer, as explained above, thus serving the policy goal of judicial economy as explained by the Ninth Circuit (*Valentino*, *supra*, 97 F.3d at 1234). *See* TAC ¶ 40.

Thus, the common issues predominate in this TCPA action, regardless of the ultimate merits of Mr. Springer's claims. *See Lee,* 2013 U.S. Dist. LEXIS at *11-12 ("however strong [defendant's] arguments on the merits may be for avoiding liability, there is no reason those issues cannot be properly decided on a class-wide basis, and plaintiff has otherwise satisfied the prerequisites for certification…").

Hybrid class certification is therefore appropriate.

### G.    A Class Action Is Superior To Numerous Individual TCPA Actions

"Class actions were designed for these types of claims." *G.M. Sign, Inc. v. Group C Communs., Inc.*, 2010 U.S. Dist. LEXIS 17843, *16 (N.D. Ill. Feb. 25, 2010) (quoting *Murray v. GMAC Mortgage Corp.*, 434 F.3d 948, 953 (7th Cir. 2006) ("'Rule 23(b) was designed for situations … in which the potential recovery is too slight to support individual suits, but injury is substantial in the aggregate.'")

Kazerouni Law Group, APC
Costa Mesa, California

This inquiry calls for a comparison of alternative methods for resolution of the dispute (*Hanlon*, 150 F.3d at 1023), such as the TCPA claims common to the Class.

Class certification here is superior to numerous individual TCPA actions and thus serves the efficient and appropriate resolution of Defendant's alleged violations of the TCPA, which implicates the rights of potentially thousands of persons throughout the nation (*see generally* TAC ¶ 32), and will provide no difficulty in allocating fixed statutory damages under 47 U.S.C. § 227(b)(3)(B). If multiple TCPA suits were filed, there would be a risk of inconsistent results arising from injunctive relief regarding the numerous consumers affected by Defendant's debt collection calling practices. *See e.g.*, *Westways World Travel, Inc. v. AMR Corp.*, 218 F.R.D. 223, 236-37 (C.D. Cal. 2003) ("Where common questions 'predominate,' a class action can…avoid inconsistent outcomes…").   The Class members are individual consumers who are not likely able to successfully maintain a TCPA action against Defendant where the maximum statutory damages per negligent violation of the TCPA is only $500, or $1,500 for a willful violation. Thus, a class action here is a superior means of dispute resolution. *See Bellows v. NCO Fin. Sys.*, 2008 U.S. Dist. LEXIS 114451, *20 (S.D. Cal. Sept. 5, 2008).

## VI.   CONCLUSION

For the foregoing reasons, Mr. Springer respectfully requests the Court grant the Motion for Class Certification under Rule 23(b)(2) and (b)(3), appoint Mr. Springer as Class Representative, and appoint Mr. Springer's attorneys Abbas Kazerounian, Joshua B. Swigart and Todd M. Friedman as Class Counsel.

Respectfully submitted,

**KAZEROUNI LAW GROUP, APC**

Date: April 28, 2014

By:/s/ Abbas Kazerounian
   Abbas Kazerounian
   *Attorneys for Plaintiff,*
   *Richard Springer*

///

**HYDE & SWIGART**
Joshua B. Swigart, Esq. (SBN: 225557)
josh@westcoastlitigation.com
2221 Camino Del Rio South, Suite 101
San Diego, CA 92108
Telephone: (619) 233-7770
Facsimile: (619) 297-1022
*Attorneys for Plaintiff*

**LAW OFFICES OF TODD M. FRIEDMAN, P.C.**
Todd M. Friedman (SBN: 216752)
Nicholas J. Bontrager (SBN: 252114)
324 S. Beverly Dr., #725
Beverly Hills, CA 90212
Telephone: 877-206-4741
Facsimile: 866-633-0228
*Attorneys for Plaintiff*

**Kazerouni Law Group, APC**
Costa Mesa, California