# EXHIBIT C

Exhibit C

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TIMOTHY BARRETT, Individually and on Behalf of all Others Similarly Situated,<br><br>　　　　　　　　　　　　Plaintiff,<br>vs.<br>WESLEY FINANCIAL GROUP, LLC,<br>　　　　　　　　　　　　Defendant. | CASE NO. 13cv554-LAB (KSC)<br><br>**ORDER GRANTING MOTION FOR CLASS CERTIFICATION** |

Timothy Barrett accuses Wesley Financial Group, LLC of using an automated dialer to place a prerecorded call to his cellular phone in violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.* (TCPA). Barrett has moved for class certification. (Docket no. 48.)

## I.　Factual Allegations

Barrett asserts that, on March 1, 2013 at about 9:10 a.m., he received a call to his cellular phone from the number (206) 337-1111. He alleges that the call was made by InfoLink (also referred to as VoiceLogic in the parties' filings) on behalf of Wesley Financial. When he answered his phone, Barrett heard a prerecorded message. Following instructions in the message, he pushed the number one key on his phone's dial pad to speak to a representative. Once connected, the representative informed him that he was calling from "Wesley Financial." Barrett alleges that he had never provided Wesley Financial or InfoLink

**Exhibit C**

with his telephone number, entered into a business relationship with Wesley Financial or InfoLink, or provided Wesley Financial or InfoLink consent to call him. Based on this call, he brought this action on behalf of himself and others who likely received the same automated calls.

Wesley Financial's CEO and President, Charles McDowell, testified at his deposition that Wesley Financial purchases consumers' phone numbers from third party vendors, and then calls consumers to offer them help with cancelling their timeshare or eliminating timeshare debt. Wesley Financial obtained Barrett's number from one of these third party vendors, but McDowell has no evidence that the vendor had permission to call Barrett. Michael Bowling was in charge of generating leads and he created the prerecorded voice message and hired InfoLink to place the calls. Barrett also deposed Bowling, who testified that one of his managers at Wesley Financial came up with the idea to use InfoLink.

Wesley Financial produced a list of 17,910 calls InfoLink made on Wesley Financial's behalf on March 1, 2013.[1] Barrett's consultant scrubbed this list, and determined that it included 3,105 calls to unique cellular phone numbers, including his. InfoLink used the (206) 337-1111 telephone number in making calls.

**II. Claims at Issue**

Barrett maintains that Wesley Financial violated the TCPA by instructing InfoLink to make calls on its behalf. The TCPA makes it unlawful to (1) make any call (2) using an automatic dialing system or artificial or prerecorded voice (3) to any cellular telephone number, unless the call is made for emergency purposes or with the recipient's express consent. 47 U.S.C. § 227(b)(1)(A). Express consent is not an element of a prima facie case under the TCPA. *Grant v. Capital Mgmt. Servs., L.P.*, 449 Fed. Appx. 598, 600 n.1 (9th Cir. 2011). Instead, it's "an affirmative defense for which the defendant bears the burden of proof." *Id.* Under the TCPA, a defendant may be held vicariously liable for calls it does not

---

[1] The Court assumes this was a discreet incident, and not part of a pattern of similar calls around the same time. If either party learns that other similar calls were made on behalf of Wesley Financial, it should inform the Court of that fact. The Court reserves the right, in the interest of judicial economy, to enlarge the class if appropriate, to include others who received similar calls.

- 2 - 13cv554

**Exhibit C**

directly initiate under federal common law principles of agency. *Thomas v. Taco Bell Corp.*, 582 Fed. Appx. 678, 679 (9th Cir. 2014) ("[V]icarious liability can provide the basis for liability for a TCPA violation."); *Gomez v. Campbell-Ewald Co.*, 768 F.3d 871, 877–78 (9th Cir. 2014).

**III. Class Definition**

In his motion for class certification, Barrett identifies a proposed class consisting of:

> All persons within the United States who had or have a number assigned to a cellular telephone service, who received at least one call from InfoLink Communications Group on behalf of Wesley Financial Group, LLC using an automatic telephone dialing system and/or an artificial or prerecorded voice on March 1, 2013, who were not customers of Wesley Financial Group, LLC.

Barrett excludes from this proposed class persons whom InfoLink called for emergency purposes and persons who gave prior express consent to Wesley Financial to call their cellular telephone number.

Barrett's proposed class definition technically includes members who received a call made to a telephone number that was not "assigned to a . . . cellular telephone service." 47 U.S.C. § 227(b)(1)(A). That's because the proposed class includes those who "have a number assigned to a cellular telephone service" and "received at least one [relevant] call," but the definition does not specify that the call was made to the cellular phone. The proposed class, as defined, is overbroad. It would include members that received a call from InfoLink even if the call was not made to the member's cellular phone. But, the Court has the power to cure defects in a class definition to protect a class. *Wolph v. Acer Am. Corp.*, 272 F.R.D. 477, 483 (N.D. Cal. 2011). To cure the overbreadth of the proposed class, the class definition is amended to include:

> All persons who, on March 1, 2013, received at least one call made to a number assigned to a cellular telephone service, from InfoLink Communications Group on behalf of Wesley Financial Group, LLC using an automatic telephone dialing system and/or an artificial or prerecorded voice, who were not customers of Wesley Financial Group, LLC, and who were not called for emergency purposes and had not given prior express consent to the call.

/ / /

/ / /

**Exhibit C**

Because the Court has modified the class definition Barrett proposed, he may amend the First Amended Complaint to conform the class definition to this Order. *See McPhail v. First Command Fin. Planning, Inc.*, 247 F.R.D. 598, 608 (S.D. Cal. 2007).

## IV. Legal Standard

Federal Rule of Civil Procedure 23 governs class actions, and requires the Court to conduct a "rigorous analysis" before certifying a class. See *Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 588 (9th Cir. 2012). The party seeking certification has the burden to show that the rule has been met. *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011). Thus, to obtain class certification, the plaintiff must satisfy four prerequisites identified in Rule 23(a), as well as one of the three subdivisions of Rule 23(b).

Rule 23(a) is satisfied where

> (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

The four requirements are commonly referred to as numerosity, commonality, typicality, and adequacy of representation. *United Steel, Paper & Forestry, Rubber, Mfg. Energy, Allied Indus. & Serv. Workers Int'l Union, AFL-CIO, CLC v. ConocoPhillips Co.*, 593 F.3d 802, 806 (9th Cir. 2010). Barrett seeks certification under Fed. R. Civ. P. 23(b)(2) and 23(b)(3). Rule 23(b)(2) applies where the primary relief sought is injunctive, and any money damages are not individualized. Certification under Rule 23(b)(3) applies where common questions predominate over individualized ones and a class action is the superior mechanism for dispute resolution.

In deciding class certification, the Court doesn't determine whether the plaintiff has stated a cause of action or whether he will prevail on the merits. *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 178 (1974). Instead, the Court only determines whether the requirements of Rule 23 are met. *Id.* The Court must generally accept the substantive allegations made in the complaint as true, but need not accept allegations relating to class certification issues. *See In re Petroleum Prods. Antitrust Litig.*, 691 F.2d 1335, 1342 (9th Cir.

1982); *Gomez v. Rossi Concrete, Inc.*, 270 F.R.D. 579, 585 (S.D. Cal. 2010). "In addition, the court may consider supplemental evidentiary submissions of the parties." *Keilholtz v. Lennox Hearth Products Inc.*, 268 F.R.D. 330, 335 (N.D. Cal. 2010). "Neither the possibility that a plaintiff will be unable to prove his allegations, nor the possibility that the later course of the suit might unforeseeably prove the original decision to certify the class wrong, is a basis for declining to certify a class which apparently satisfies Rule 23." *ConocoPhillips*, 593 F.3d at 809 (citation and brackets omitted). "[A] district court retains the flexibility to address problems with a certified class as they arise, including the ability to decertify." *Id.*

**V.  Discussion**

   **A.  Whether the Class is Ascertainable**

"Although there is no explicit requirement concerning the class definition in [Rule 23], courts have held that the class must be adequately defined and clearly ascertainable before a class action may proceed." *Astiana v. Kashi Co.*, 291 F.R.D. 493, 500 (S.D. Cal. 2013) (quotation omitted). "A class is ascertainable if it identifies a group of unnamed plaintiffs by describing a set of common characteristics sufficient to allow a member of that group to identify himself or herself as having a right to recover based on the description." *Krueger v. Wyeth, Inc.*, 2011 WL 8984448, at *1 (S.D. Cal. July 13, 2011) (quotation omitted). While class members' identities need not be known at the class certification stage, it "must be administratively feasible to determine whether a particular person is a class member." *Algarin v. Maybelline, LLC*, 300 F.R.D. 444, 454 (S.D. Cal. 2014). In determining ascertainability, courts are concerned with "identifying and providing notice to the class members as individuals, not merely numbers on a list." *Smith v. Microsoft Corp.*, 297 F.R.D. 464, 473 (S.D. Cal. 2014). In fact, some courts have denied motions for class certification, even when the criteria for class membership are objective, if the plaintiff cannot show at the class certification stage that they will be able to locate the absent class members. *Lilly v. Jamba Juice Co.*, 2014 WL 4652283, at *4 (N.D. Cal. Sept. 18, 2014). Additionally, "[a] class must be ascertainable without inquiring into the merits of the case." *Vandervort v. Balboa Capital Corp.*, 287 F.R.D. 554, 557 (C.D. Cal. 2012).

The proposed class is ascertainable. Under the proposed class definition, objective criteria determine who the class members are. Whether someone is a class member can be determined by asking whether (1) InfoLink (2) on behalf of Wesley Financial (3) placed any call (4) to the cellular telephone of (5) non-customers (6) using an automatic telephone dialing system and/or with an artificial or prerecorded voice (7) without an emergency purpose or prior express consent (8) on March 1, 2013. Documents already obtained in discovery demonstrate that Wesley Financial's business records are sufficient to determine whether someone is a member of the class. *See Hofstetter v. Chase Home Fin., LLC*, 2011 WL 1225900, at *12 (N.D. Cal. Mar. 31, 2011). Barrett has also described a method to identify specific members of the class through defendants' records and a reverse telephone lookup. *See Barani v. Wells Fargo Bank, N.A.*, 2014 WL 1389329, at *10 (S.D. Cal. Apr. 9, 2014).

Wesley Financial contends that the putative class is not ascertainable because "this Court would have to delve into the merits and hold mini-trials to determine which individuals consented to receiving phone calls from Defendant":

> [T]he proposed class definition would require the Court to make the following impermissible determinations of merit: whether individuals were called on their cell number; who placed these calls; whether, if these calls were placed, Defendant can be held vicariously liable for another's actions; whether Defendant, or its purported agent, used an [automatic dialing system]; and whether individuals consented by voluntarily providing their cell numbers to Wyndham, while knowing that Wyndham sold this information to third-parties.

(Docket no. 50, at 14:23–15:5.)

Some courts have found a proposed class unascertainable because the question of whether class members provided consent would require an individualized inquiry. *See, e.g., Vandervort*, 287 F.R.D. at 558. But, those cases involved at least an allegation that some class members provided consent. *Id.* (denying class certification of two of the plaintiffs' three proposed classes where the "[d]efendant introduced evidence that at least some recipients of faxes who were cold called consented to receiving the fax advertisements"); *Gannon v. Network Tel. Servs., Inc.*, 2013 WL 2450199, at *2 (C.D. Cal. June 5, 2013) (finding proposed TCPA was not ascertainable because the "[d]efendants provide[d] evidence that

some of the [text message] recipients may have consented"); *see also Hinman v. M & M Rental Ctr., Inc.*, 545 F. Supp. 2d 802, 808 (N.D. Ill. 2008) (certifying TCPA class defined to include consent).

Wesley Financial alleges nothing more than the *mere possibility* that some class members *may have* provided consent. Wesley Financial first states that it obtained the relevant telephone numbers from Wyndham Vacation Resorts. Later, it makes the contradictory claim that it may have obtained the telephone numbers through its website or from "numerous third parties" so "there are numerous ways that any putative class member may have consented to receiving phone calls." But Wesley Financial cannot escape class certification by playing coy. It produced the phone number list in discovery, and the source of these numbers is in its control. *Cf. Levitt v. Fax.com*, 2007 WL 3169078, at *2 (D. Md. May 25, 2007) (finding class unascertainable where party with records of class members' identity and consent to being called was no longer part of the litigation). If Wesley Financial wants the Court to find a lack of ascertainability, it must do more than offer speculative theories about what "may have" happened.

The same is true for the other issues Wesley Financial raises  It surmises that some potential class members may have been called through voice over internet protocol (VoIP) or on a landline telephone number, but received the call on a cellular number through call forwarding or porting. Barrett's consultant says that the Defendants' records allow for objective determination of which calls were made to cellular numbers, and Wesley Financial doesn't challenge that position. It also doesn't deny that its records, along with those of InfoLink, can confirm whether InfoLink made the March 1, 2013 calls on its behalf, and whether InfoLink used an automatic telephone dialing system or an artificial or prerecorded voice. Wesley Financial does not even deny those allegations. Instead, it merely speculates that perhaps InfoLink didn't place the calls and wasn't acting on its behalf. This is insufficient.

/ / /

/ / /

Wesley Financial also suggests that individual fact finding will be needed to determine class members' emotional and economic harm. But because Barrett seeks only statutory damages on behalf of himself and the class, this argument fails as well.

**B. Rule 23(a)**

**1. Whether the Class Meets the Numerosity Requirement**

Barrett claims that there are 3,105 class members and that this meets the numerosity requirement. Wesley Financial does not dispute this, and the Court finds the numerosity requirement is met. *See, e.g., Immigrant Assistance Project of Los Angeles Cnt. Fed'n of Labor v. INS*, 306 F.3d 842, 869 (9th Cir. 2002) (citing thirteen cases in which courts certified classes with fewer than 100 members).

**2. Whether the Class Meets the Commonality Requirement**

"[C]ommonality requires that the class members' claims depend upon a common contention such that determination of its truth or falsity will resolve an issue that is central to the validity of each claim in one stroke." *Mazza*, 666 F.3d at 588 (quotation and brackets omitted). Rule 23(a)(2) is construed permissively. *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998). "What matters to class certification is not the raising of common questions . . . but, rather the capacity of a classwide proceeding to generate common *answers* apt to drive the resolution of the litigation." *Dukes*, 131 S. Ct. at 2551 (ellipses and quotation omitted). "This does not, however, mean that *every* question of law or fact must be common to the class; all that Rule 23(a)(2) requires is 'a single *significant* question of law or fact.'" *Abdullah v. U.S. Sec. Associates, Inc.*, 731 F.3d 952, 957 (9th Cir. 2013) (quoting *Mazza*, 666 F.3d at 589).

Wesley Financial claims that there is no commonality because "the issue of consent prevents a finding that the class's injuries are capable of classwide resolution." "Courts determine whether issues of individualized consent defeat commonality and predominance in a TCPA on a case-by-case basis after evaluating the specific evidence available to prove consent." *Buonomo v. Optimum Outcomes, Inc.*, 301 F.R.D. 292, 298 (N.D. Ill. 2014). "The Ninth Circuit has held that in the absence of any evidence of consent by the defendant,

- 8 -
13cv554

**Exhibit C**

consent is a common issue with a common answer." *Kristensen v. Credit Payment Servs.*, 2014 WL 1256035, at *9 (D. Nev. Mar. 26, 2014) (citing *Meyer v. Portfolio Recovery Assocs., LLC*, 707 F.3d 1036 (9th Cir. 2012)). As before, Wesley Financial maintains it obtained telephone numbers from its website and from third parties, and suggests that there are many ways a class member may have provided consent. But it fails to present any specific evidence—as opposed to mere speculation—that consent issues predominate over common issues. If it uncovers evidence, the Court can consider decertification. *Stern v. DoCircle, Inc.*, 2014 WL 486262, at *9 (C.D. Cal. Jan. 29, 2014). Barrett alleges that the class members were subjected to the same call under the same circumstances, so the class members' TCPA claims are based on a common contention. Rule 23(a)(2) is satisfied.

### 3. Whether the Class Meets the Typicality Requirement

"The purpose of the typicality requirement is to assure that the interest of the named representative aligns with the interests of the class." *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992). "Representative claims are typical if they are reasonably co-extensive with those of absent class members; they need not be substantially identical." *Meyer*, 707 F.3d 1036 at 1042 (brackets and quotation omitted). The test of typicality "is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Hanon*, 976 F.2d at 508. A class representative is not typical if he is subject to unique defenses. *Id.*

Wesley Financial argues, without citing evidence, that typicality is not met because the list of call recipients may include calls that were placed to a landline telephone number or to VoIP. But, Barrett's evidence suggests that the defendants' records allow for objective determination of which calls were made to cellular numbers. Barrett meets the typicality rule's "permissive standards." *See Hanlon*, 150 F.3d at 1020. His claims are "reasonably co-extensive" with other class members because they were allegedly injured by similar conduct and suffered similar harm: they received prerecorded calls made to their cellular telephones without prior express consent. Because "[t]ypicality refers to the nature of the

- 9 - 13cv554

**Exhibit C**

claim or defense of the class representative, and not to the specific facts from which it arose or the relief sought," *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 984 (9th Cir. 2011) (citation omitted), Barrett has carried his burden here.

### 4. Whether the Class Meets the Adequacy Requirement

"To satisfy constitutional due process concerns, absent class members must be afforded adequate representation before entry of a judgment which binds them." *Hanlon*, 150 F.3d at 1020. To determine legal adequacy, courts must resolve two questions: "(1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Id.*

Wesley Financial provides no argument on this issue, and the Court has no reason to believe that the named plaintiff and his counsel will not adequately represent the interests of the class. *See Lo v. Oxnard European Motors, LLC*, 2011 WL 6300050, at *3 (S.D. Cal. Dec. 15, 2011). Thus, Rule 23(a)(4)'s adequacy requirement is met.

### C. Rule 23(b)

Barrett seeks certification under both Fed. R. Civ. P. 23(b)(2) and 23(b)(3). Plaintiff need only satisfy one of the Rule 23(b) subdivisions, but a class can be certified under both Rule 23(b)(2) and 23(b)(3), provided the requirements for both are met. *See Olden v. LaFarge Corp.*, 383 F.3d 495, 507 (6th Cir. 2004) (noting that district court certified a class under both provisions, each of which carries its own prerequisites); *Hofstetter*, 2011 WL 1225900, at *15 (certifying class under both provisions).

### Rule 23(b)(2)

"Class certification under Rule 23(b)(2) is appropriate only where the primary relief sought is declaratory or injunctive." *Ellis*, 657 F.3d at 986. Unlike classes certified under Rule 23(b)(3), participation in a Rule 23(b)(2) class is mandatory; class members do not have the right to be notified of the case, and no opt-out right is available. Because these protections are absent, a Rule 23(b)(2) class violates due process if it is predominantly for monetary damages. *Ellis*, 657 F.3d at 987. Although the Ninth Circuit previously held that,

- 10 - 13cv554

**Exhibit C**

in Rule 23(b)(2) cases, monetary damage requests were generally allowable if they were incidental to the litigation, the Supreme Court has called this standard into doubt. *Dukes*, 131 S.Ct. at 2560 ("We need not decide in this case whether there are any forms of 'incidental' monetary relief that are consistent with the interpretation of Rule 23(b)(2) we have announced and that comply with the Due Process Clause.").

The Court agrees certification of a Rule 23(b)(2) class seeking monetary relief is inappropriate in this case because injunctive relief is not primary. First, while Barrett argues the virtues of injunctive relief, he never explains why injunctive relief is primary. Second, Wesley Financial represents that the calls have stopped. While Barrett is not required to take Wesley Financial at its word, and injunctive relief may still be *appropriate* even if the challenged conduct has ceased, this fact suggests that injunctive relief is not *primary*. *Knutson v. Schwan's Home Serv., Inc.*, 2013 WL 4774763, at *9 (S.D. Cal. Sept. 5, 2013); *see also BP W. Coast Products LLC v. Takhar Bros. Inc.*, 2007 WL 3342613, at *1 (D. Ariz. Nov. 8, 2007) ("[T]he defendants' profession that the conduct sought to be enjoined has ceased is an important factor to be considered in determining the appropriateness of granting an injunction against now-discontinued acts."). Thus, it would be inappropriate to certify this action in its entirety under Rule 23(b)(2).

In cases like this, where a plaintiff seeks both declaratory and monetary relief, the court may certify a damages-seeking class under Rule 23(b)(3), and an injunction-seeking class under Rule 23(b)(2). *See, e.g., Wang v. Chinese Daily News, Inc.*, 737 F.3d 538, 544 (9th Cir. 2013); *In re ConAgra Foods, Inc.*, 2015 WL 1062756, at *29 (C.D. Cal. Feb. 23, 2015). The Court finds it appropriate here to certify a class for injunctive relief pursuant to Rule 23(b)(2) because "a single injunction or declaratory judgment would provide relief to each member of the class." *Dukes*, 131 S. Ct. at 2557.

### 2. Rule 23(b)(3) Predominance and Superiority

Certification under Rule 23(b)(3) is appropriate where common questions of law or fact predominate and class resolution is superior to other available methods.

///

**Exhibit C**

### a.  Whether Common Questions Predominate

"The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 623 (1997). "When common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is clear justification for handling the dispute on a representative rather than on an individual basis" *Hanlon*, 150 F.3d at 1022 (quotation omitted).

Because the telephone calls at issue were made en masse by InfoLogic, Barrett's claims arise out of a common course of conduct. One common question is whether Wesley Financial can be held vicariously liable for the calls made by InfoLogic, and there are others as well. The issue of consent does not make individualized issues predominant because "issues of individualized consent predominate when a defendant sets forth specific evidence showing that a significant percentage of the putative class consented to receiving calls on their cellphone." *Jamison v. First Credit Servs., Inc.*, 290 F.R.D. 92, 106–07 (N.D. Ill. 2013). But where, as here, "the defendant[] fail[s] to set forth this specific evidence and instead only make[s] vague assertions about consent, then individualized issues regarding consent will not predominate over common questions of law or fact so as to prevent class certification." *Id.* at 107. The predominance requirement is met.

### b.  Whether Class Resolution is Superior

A plaintiff can satisfy the superiority requirement where "classwide litigation of common issues will reduce litigation costs and promote greater efficiency." *Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1234 (9th Cir. 1996). In order to make this determination, the Court should consider: "the class members' interests in individually controlling the prosecution or defense of separate actions"; "the extent and nature of any litigation concerning the controversy already begun by or against class members"; "the desirability or undesirability of concentrating the litigation of the claims in the particular forum"; and "the likely difficulties in managing a class action." Fed. R. Civ. P. 23(b)(3).

/ / /

**Exhibit C**

1   Wesley Financial makes two arguments class treatment is not superior. First, it
2 contends TCPA provides adequate incentive for individuals to prosecute their claims, and
3 it should therefore be enforced through individual lawsuits. Second, it argues class treatment
4 would result in liability that is "enormous and completely out of proportion to any harm
5 suffered by the plaintiff." *See London v. Wal-Mart Stores, Inc.*, 340 F.3d 1246, 1255 n.5
6 (11th Cir. 2003). Citing *Kline v. Coldwell, Banker & Co.*, 508 F.2d 226, 234–35 (9th Cir.
7 1974), it argues that certifying a class asking for over $6 million in damages would shock the
8 conscience,

9   As to Wesley Financial's first argument, the Court disagrees that a potential damage
10 award of $500 is sufficient to motivate a consumer to initiate an individual TCPA claim. *See*
11 *Bellows v. NCO Fin. Sys., Inc.*, 2008 WL 4155361, at *8 (S.D. Cal. Sept. 5, 2008) (holding
12 in a TCPA action that "[t]he class action procedure is the superior mechanism for dispute
13 resolution in this matter" and explaining "[t]he alternative mechanism, permitting individual
14 lawsuits for a small statutory penalty, would be costly and duplicative."); *Kavu*, 246 F.R.D.
15 at 650 (finding superiority in a TCPA action because "individual damages are small, and
16 class members would be unlikely to litigate claims on their own"). And the TCPA does not
17 provide for fee awards. *Reid v. I.C. Sys. Inc.*, 2014 WL 7717567 (D. Ariz. Oct. 8, 2014).
18 Under the Rule 23(b)(3) factors, resolution of this case on a classwide basis, rather than in
19 thousands of individual lawsuits (which may never be brought because of their relatively
20 small value), is superior because it will allow for more efficient use of both judicial and party
21 resources.

22   Wesley Financial's second argument fares no better. In *Kline*, the Ninth Circuit upheld
23 a district court's refusal to certify a class requesting $750 million in statutory treble damages
24 on the basis that the "outrageous" award sought would "shock the conscience." *Id.* Wesley
25 Financial's potential liability of $6 million is far less than the $750 million at issue in *Kline*. And
26 more recent decisions from courts in this Circuit have distinguished *Kline*. Those courts take
27 the approach that class certification is generally the wrong stage to challenge due process
28 concerns. *See, e.g., In re: Hulu Privacy Litigation*, 2014 WL 2758598, at *23 (N.D. Cal. Jun

**Exhibit C**

17, 2014) (due process concerns are best addressed after class certification); *Labrador v. Seattle Mortg. Co.*, 2010 WL 3768378, at *7 (N.D. Cal. Sept. 22, 2010) (distinguishing *Kline*, and noting $150 million is significantly less than *Kline*'s $750 million award). One Ninth Circuit decision, post-*Kline*, also held that massive liability, by itself, is not a proper reason to deny class certification under Rule 23(b)(3). *See Bateman v. Amer. Multi-Cinema, Inc.*, 623 F.3d 708, 721 (9th Cir. 2010).

The approach taken in *Bateman* is more appropriate here. If due process concerns arise, Wesley Financial will have an adequate opportunity to challenge liability at later stages of litigation. *See In re Toys R Us-Delaware, Inc.-FACTA Litigation*, 300 F.R.D. 347, 362 (C.D. Cal. 2013) (denying class certification based on excessive liability is redundant because courts can reduce unconstitutionally excessive damages at later proceedings). Refusing to certify simply based on the size of a defendant's liability would defeat Rule 23(b)(3)'s purpose: "to allow integration of numerous small individual claims into a single powerful unit." *Blackie v. Barrack*, 524 F.2d 891, 899 (9th Cir. 1975); *see also* NEWBERG ON CLASS ACTIONS, § 4:43 ("A rule that would exempt a defendant from liability in a class action merely because damages are large would invite defendants to violate the law on a grand scale, with the knowledge that they could avoid liability by claiming that if they were forced to account for their wrongful conduct they would be put out of business."). In short, heavy liability is not a reason to deny class certification; Defendant's due process concerns can be adequately addressed later. The superiority requirement is therefore satisfied, and Barrett has satisfied Rule 23(b)(3).

## VI. Conclusion and Order

Barrett's motion for class certification is **GRANTED**. The Court **CERTIFIES** a damages-seeking class under Rule 23(b)(3), and an injunction-seeking class under Rule 23(b)(2). The membership of each class is identical; the only difference between the two classes is the type of relief sought.

/ / /

/ / /

Barrett shall promptly amend the First Amended Complaint to modify the class definition according to this Order.

**IT IS SO ORDERED**.

DATED: March 30, 2015

*Larry A. Burns*

**HONORABLE LARRY ALAN BURNS**
United States District Judge

**Exhibit C**